IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JESSIE BLANKENSHIP,

       Plaintiff,

 v.

NICHOLAS GRAY,

       Defendant.

OPINION and ORDER

24-cv-113-wmc

---

Plaintiff Jessie Blankenship, representing himself, claims that Jackson County Detective Nicholas Gray manufactured false evidence to implicate him in an armed robbery, resulting in his lengthy detention in county jail before eventually being acquitted. He is proceeding on claims under the Fourth and Fourteenth Amendments. Now before the court is defendant Gray's motion for summary judgment. (Dkt. #36.) Because the undisputed evidence shows that plaintiff's detention was supported by probable cause and defendant did not violate plaintiff's constitutional rights, the motion will be granted.[1]

UNDISPUTED FACTS[2]

---

[1] Also before the court are several miscellaneous motions filed by plaintiff. Several of the motions concern plaintiff's request to join additional defendants and claims regarding his jail conditions. (Dkt. #22, 23, 27.) Those motions will be denied. As the court instructed plaintiff in its screening order, claims about jail conditions would need to proceed in a separate lawsuit because his experiences in jail are distinct from his claims against defendant Gray. (Dkt. #9, at 2.) Plaintiff also filed a motion regarding using the postal service once he was released from jail (dkt. #28), but based on plaintiff's ability to submit numerous motions and a response to defendant's motion for summary judgment, it appears that plaintiff's concerns about the postal service were unwarranted. So that motion will be denied as moot. Plaintiff's motion regarding his interactions with a business owner and local police after his release (dkt. #33), will also be denied because it is unrelated to the issues in this case. Finally, his motions objecting to defendant's expert witness disclosure (dkt. #42) and motion for consideration of his summary judgment response (dkt. #51) will be denied as moot.

[2] Unless otherwise indicated, the following facts are undisputed and drawn from the parties'

On November 27, 2019, two men committed an armed robbery of a Holiday gas station in Black River Falls, Wisconsin. Law enforcement received a call reporting the robbery at 10:59 p.m. on the night of the robbery. The caller reported that there were two assailants, one being a Black man, wearing black hoodies and blue jeans, and who were armed with a knife and possibly a gun. After striking the caller in the face with either a fist or gun, the assailants left on foot. Jackson County Deputy Joshua Demaske responded to the call. He noted in his report (dkt. #38-3) that while he was en route, he saw a white Pontiac sedan without license plates driving south on North Water Street in front of the Holiday gas station. Demaske also noted that the driver was a Black male wearing a dark sweatshirt or jacket.

Deputy Demaske noted that sedan specifically because earlier in the evening, at 6:26 p.m., he had conducted a traffic stop of a white Pontiac Grand Prix with no license plates. At the time, however, the driver was a woman, Dominique Robinson, who reported that she had just purchased the vehicle. After Deputy Demaske determined that Robinson had a suspended license, he escorted her to a grocery store parking lot to wait for a valid driver. At approximately 6:45 p.m., that grocery store's surveillance footage showed a Black man entering the store, wearing a black hooded sweatshirt, black jacket, black pants and black sandals. The man walked around the store and then left in a light-colored vehicle. After reviewing that footage later, law enforcement believed that man was plaintiff Jessie Blankenship.

Later that evening, at 8:55 p.m., another police officer conducted a traffic stop of the same white Pontiac Grand Prix, with no license plates, near a gas station in the Village of Merrillan, Wisconsin, about 11 miles from Black River Falls. Treyton Laufenberg, who is

---

proposed findings of fact and responses, as well as the undisputed record evidence, where appropriate.

2

white, was driving and Blankenship was in the front passenger seat. (Dkt. #38-3, at 5.) An officer's bodycam footage from that traffic stop showed Blankenship wearing a beanie-style black hat, black colored jacket and blue jeans with a hole in the left knee area. (The right knee is not visible on the bodycam footage.)

At approximately 11:00 p.m., when Deputy Demaske and other officers arrived at the Holiday gas station, they interviewed witnesses and reviewed gas station surveillance footage showing the two robbers. That footage showed that one of the robbers was a Black male, wearing a form fitting black coat or sweatshirt with a hood, a beanie-style black hat, blue jeans with tears in the knees and black shoes. Surveillance footage also showed a white sedan traveling southbound in front of the gas station immediately after the robbery.

Later that night, Deputy Demaske located the white Pontiac Grand Prix outside the home of Dominique Robinson. According to his report, Demaske saw a black jacket in the vehicle similar to the jacket worn by the Black male during the robbery. In addition, officers found a BB gun, which looked like a handgun, as well as a pair of jeans, abandoned at an auto store across the street from the gas station.

Defendant Detective Nicholas Gray from the Jackson County Sheriff's Department was assigned to investigate the robbery case. After reviewing the evidence, he believed that Blankenship was one of the robbers. Blankenship was then criminally charged in connection with the armed robbery and brought before the Honorable Anna Becker in Jackson County Circuit Court for a preliminary hearing.

At the hearing, Detective Gray testified that he had reviewed evidence, including Deputy Demaske's report, bodycam footage of the 8:55 p.m. traffic stop of a white Pontiac, surveillance footage from the grocery store, and surveillance footage from the Holiday gas station. He further testified that the clothing Blankenship was wearing during the 8:55 p.m.

traffic stop "appears consistent with the clothing worn by one of the robbers." (Dkt. #38-1, at 21.)  Detective Gray also testified that law enforcement suspected Laufenberg and Blankenship were involved in the robbery because their white Pontiac vehicle matched the description of a vehicle seen in the area immediately after the robbery, and Gray had later determined that Blankenship was the individual who had purchased the white Pontiac. (*Id.* at 22.)  In addition, Gray testified that: the Sheriff's Office had received an anonymous call identifying Laufenberg and Blankenship as the robbers; Gray had listened to calls Laufenberg made to family and friends from the jail accusing Blankenship of being involved in the robbery with him; and crime lab testing showed Laufenberg's DNA on both the BB gun and jeans recovered near the gas station, although Blankenship's DNA was found on neither item. Finally, Gray testified that when Blankenship turned himself in after an arrest warrant was issued, he mentioned having a BB gun without Gray telling him about the recovery of one.

At the conclusion of the preliminary hearing on May 8, 2020, the Jackson County Circuit Court found sufficient probable cause to bind Blankenship over for trial.  The judge specifically noted that although the evidence against Laufenberg was stronger, there was sufficient evidence to implicate Blankenship as well.  Because Blankenship could not afford the bond that was set, he was held in jail until his criminal trial, on May 5, 2021.  At the trial, Blankenship was acquitted of the armed robbery charges.

OPINION

Plaintiff now claims that his pretrial detention was unconstitutional because it was based on false information provided by defendant Gray at the preliminary hearing.[3]

---

[3] Plaintiff also claims that defendant violated his due process rights at his criminal trial by presenting coerced evidence about what a witness said during an interview.  However, because plaintiff was

Specifically, he asserts that defendant gave the following false testimony: (1) a white Pontiac could be seen on the surveillance footage located outside the Holiday gas station after the robbery; and (2) he believed Blankenship was the individual on the surveillance footage at the grocery store at approximately 6:45 p.m.

Plaintiff's claims challenging his pretrial detention are governed by the Fourth Amendment, which prohibits unreasonable searches and seizures. "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013) (internal quotation marks omitted). Because "pretrial detention is a 'seizure'—both before formal legal process and after[,]" it is "justified only on probable cause" to believe that the detainee has committed a crime. *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 366–67 (2017)).

To succeed on a Fourth Amendment challenge to pretrial detention, however, it is not enough for the plaintiff to show that the defendant lied or fabricated evidence at a pretrial detention hearing. Rather, the plaintiff must show that because of the defendant's fabricated evidence, the state court's order holding him for trial was not supported by probable cause. *See Young v. City of Chicago*, 987 F.3d 641, 645 (7th Cir. 2021) (upholding summary judgment for

---

acquitted of the charges against him for armed robbery, he cannot maintain a due process claim based on evidence presented at trial. *See Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) ("*[C]onvictions* premised on deliberately fabricated evidence will always violate the defendant's right to due process.") (quoting *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (emphasis added)); *cf. Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) ("[I]f an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest.")

defendants even assuming they committed misconduct in falsifying evidence, because the evidence gave the officers adequate probable cause to detain him, even as the plaintiff described it); *Anderson v. City of Rockford*, 932 F.3d 494, 510 (7th Cir. 2019) (to establish Fourth Amendment violation based on falsified evidence, plaintiff "must demonstrate not only that the defendant officers created evidence that they knew to be false, but also that the evidence was used in some way to deprive them of liberty") (internal citations and quotation marks omitted).

Accordingly, the threshold question before the court is whether plaintiff's pretrial detention was supported by probable cause, even excluding the claimed, false evidence challenged by plaintiff. "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity[.]" *Id.* at 644 (citing *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010); *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). This "is not a high bar," *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018), and is "assessed objectively," based on "the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024) (citations omitted). In addition, probable cause is a "fluid concept" that is based on the totality of the circumstances. *Garcia v. Posewitz*, 79 F.4th 874, 879–80 (7th Cir. 2023).

Here, the state circuit court found probable cause sufficient to bind plaintiff for trial based on defendant's testimony that: (1) an officer saw a Black individual driving a white Pontiac or white "sedan," without any license plates, near the Holiday gas station shortly after the robbery; (2) earlier in the evening, Blankenship was a passenger in a white Pontic, without plates, and was wearing a black hat, blue jeans with a hole in the left knee area and a black-colored jacket; (3) officers later determined that plaintiff owned a white Pontiac; (4) surveillance footage from the gas station showed that one of the robbers was a Black man

wearing clothing similar to plaintiff's; (5) an anonymous caller identified Laufenberg and Blankenship as the gas station robbers; (6) Laufenberg accused Blankenship of being involved in the robbery during conversations with his family and friends that were surreptitiously monitored by law enforcement; and (7) Blankenship mentioned having a BB gun when he turned himself in to the police.

As the state court judge concluded, the evidence that Laufenberg was involved in the gas station robbery was stronger than the evidence against plaintiff.  However, defendant did not have to prove beyond a reasonable doubt that plaintiff was also involved in the robbery at the pretrial detention stage.  *See Esco v. City of Chicago*, 107 F.4th 673, 676–77 (7th Cir. 2024) (at pretrial detention stage, officers must show that there is "probable cause to detain" on criminal charge, not that the arrestee actually committed the crime).  "The factual focus [is] on what reasonable officers would have surmised, given the situation surrounding them—not on proving if [the arrestee] was, in actuality, doing what the officers thought he was doing." *Id.*  Based on the evidence known to defendant Gray, the court is comfortable finding that a reasonable officer could, indeed would, find that plaintiff was one of the gas station robbers.

Plaintiff's arguments to the contrary are not persuasive.  In particular, plaintiff argues that: (1) it is impossible to tell from the dark surveillance footage from the gas station that the white car in the vicinity was a "Pontiac"; and (2) that the individual on the grocery store footage from earlier in the evening was actually him.  Instead, plaintiff argues that defendant's assertions despite grainy and dark surveillance footage amount to false and fabricated statements.  Even accepting plaintiff's argument as true, plaintiff ignores the much stronger evidence described above establishing probable cause to believe that he was the other robber with Laufenberg, including Laufenberg's statements implicating both of them in the robbery, another officer linking a Black man to the same kind of car, a white Pontiac sedan, shortly after

7

the robbery near where it took place, plaintiff owning the same kind of car, and being seen in the same car without plates while dressed like the robbers. This is enough for a reasonable officer to find probable cause without relying on other "false" testimony.

Of course, there is also the lack of proof of falsity, since both of his accused false or fabricated testimony were subjective statements by defendant. Moreover, plaintiff is seeking to impose a trial-level burden of proof on a probable cause pretrial detention determination. As discussed, "the question for pretrial detention is not whether the officers have evidence beyond a reasonable doubt that [the individual] committed the crime." *Moorer*, 92 F.4th at 722. Probable cause is based on "reasonableness, not perfection." *Lee v. Harris*, 127 F.4th 666, 674 (7th Cir. 2025) (citations omitted). Thus, although plaintiff raises strong, closing arguments, which were ultimately apparently successful at trial, the limitations of the evidence at that stage are not sufficient to defeat a finding of probable cause to be held over for trial. *Moorer*, 92 F.4th at 722 (plaintiff's arguments challenging his identification based on poor viewing conditions, inconsistencies and eyewitness credibility were "proper arguments to pursue on cross-examination and in closing arguments at trial, but [did] not preclude reliance by the officers in establishing probable cause"). In short, the undisputed evidence in the record establishes probable cause for plaintiff's pretrial detention, and defendant is entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Defendant Nicholas Gray's motion for summary judgment (dkt. #36) is GRANTED.

2. Plaintiff Jessie Blankenship's motion to amend complaint (dkt. #22), proposed amended complaint (dkt. #23), motion for trial separation (dkt. #27), motion for certified use of United States Postal Agency (dkt. #28), motion for injunction and

restraining order (dkt. #33), motion for review (dkt. #42), and motion for consideration (dkt. #51) are DENIED.

3. The clerk of court is directed to enter judgment for defendant and close this case.

Entered January 6, 2026.

BY THE COURT:

/s/
WILLIAM M. CONLEY
District Judge

Case: 3:24-cv-00113-wmc    Document #: 54    Filed: 01/06/26    Page 9 of 9